IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-03233-RBJ-KLM

CHARLES C. GRILLO

　　　　Plaintiff,

v.

JP MORGAN CHASE & CO.

　　　　Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

　　　　This matter is before the Court on Defendant's **Motion to Dismiss Plaintiff's Complaint** [#11][1] (the "Motion").  On January 31, 2014, Plaintiff filed a Response [#16] to the Motion.  On February 13, 2014, Defendant filed a Reply [#17].  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3), the Motion has been referred to this Court for a recommendation regarding disposition [#12].  The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#11] be **GRANTED**.

---

[1]  [#11] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Recommendation.

## I. Summary of the Case

### A.   Plaintiff's Mortgage

This case pertains to Defendant's alleged breach of a written mortgage loan modification plan.  Plaintiff alleges that in November 2007, he received a mortgage loan from Defendant during a refinancing of his residence located at 1336 Madison Street, Denver, CO 80206 (the "Property").  *Compl.* [#1] at ¶ 6.  He alleges that in order to receive the mortgage loan, Defendant required Plaintiff to consolidate the more than $50,000.00 in personal consumer credit card debt he had outstanding into the new mortgage loan at a 10.5% interest rate, which resulted in an underwater loan.[2]  *Id.*  Plaintiff alleges that because he could barely afford the monthly mortgage payments on the new mortgage loan issued by Defendant, he defaulted in May 2008.[3]  *Compl.* [#1] at ¶ 7.  Plaintiff states that in March 2009, he stopped paying the required $3,960.00 per month on his mortgage loan in anticipation of joining a mortgage loan modification program offered by Defendant.  *Id.* at ¶¶ 8-9.

Plaintiff alleges that in May 2009, he and Defendant entered into a written agreement modifying the mortgage loan (the "Trial Period Plan").  *Id.* at ¶ 15.  According

---

[2]  An underwater mortgage loan is a home purchase loan with a higher balance than the free market value of the home.  INVESTOPEDIA.COM, "Underwater Mortgage," http://www. investopedia.com/terms/u/underwater-mortgage.asp.  This situation prevents a homeowner from selling the home unless he has cash to pay the loss out of pocket.  *Id.*  If the homeowner wants to sell the home because he cannot afford the mortgage payments anymore, the home falls into foreclosure unless the borrower can renegotiate the loan.  *Id.*

[3]  Plaintiff alleges that "[t]he further effect was to saddle [him] with a large monthly mortgage payment which he was able to barely pay through May 2008.  Plaintiff then defaulted."  *Compl.* [#1] at ¶ 7.  The Court interprets this allegation to mean that Plaintiff defaulted on his Chase mortgage loan in May 2008 or shortly thereafter.  Plaintiff does not allege whether he received a second loan or a mortgage modification after defaulting in May 2008.  Therefore, it is unclear how Plaintiff's May 2008 default relates to the claims he asserts in this litigation.

to Plaintiff, among other things, the Trial Period Plan required him to make three payments of $1,451.50 by July 2009.  *Id.*  Plaintiff alleges that "[a]fter the three payments[ were successfully made,] the Trial Period Plan required Defendant to provide [him] with a permanent mortgage modification proposal."[4]  *Id.* at ¶ 16.  Plaintiff further alleges that after he satisfactorily paid the required amounts, Defendant failed to provide a modified loan proposal for eight months.  *Id.* at ¶¶ 17-18.  Plaintiff alleges that he continued to pay Defendant $1,451.50 monthly through March 2010 while waiting for the modified loan proposal.[5]  *Id.*  Plaintiff maintains that "in or about" March 2010, instead of providing a modified loan proposal, Defendant informed him that his $1,451.50 payments made pursuant to the Trial Period Plan would no longer be accepted.  *Id.* at ¶¶ 18-19.

**B.    Plaintiff's Bankruptcies and Foreclosures**

Plaintiff filed for Chapter 7 Bankruptcy on March 17, 2010 (the "First Bankruptcy").  *See First Bankruptcy Petition* [#11-3] at 2-10.  During the First Bankruptcy, Plaintiff failed to disclose any of his potential claims against Defendant related to the 2009 Trial Period Plan.  *See First Bankruptcy Summary of Schedules* [#11-4] at 17-28.  On June 25, 2010, the bankruptcy court granted Plaintiff an order of discharge.  *See First Bankruptcy Petition*

---

[4]  Plaintiff alleges that "[a]fter the three payments[,] Chase promised to provide Plaintiff with a mortgage modification proposal under the 'Home Affordable Trial Period Plan."  The Court interprets this to allege that Defendant's  promise  to provide Plaintiff with a mortgage modification proposal was a part of the written Trial Period Plan between Defendant and Plaintiff.  Neither Plaintiff nor Defendant have provided the Court with a copy of the Trial Period Plan.

[5]  Plaintiff alleges that he continued to make the $1,451.50 payments "until 2010."  *Id.* at ¶ 17.  He then alleges that in March 2010, Chase told Plaintiff that his modified mortgage payments would not be accepted "despite Plaintiff faithfully making all his mortgage payments."  *Id.* at ¶ 18.  Because Plaintiff's allegation that he continually made all of his mortgage payments implies that he paid monthly until Defendant's rejection, the Court interprets this to allege that Plaintiff was paying $1,451.50 monthly until March 2010.

[#11-3] at 6.  In June 2010, Defendant filed a foreclosure action against the Property in the District Court of Denver County, Colorado.  *See generally First Register of Actions* [#11-5] (the "First Foreclosure Action").  This foreclosure action was dismissed without prejudice on September 16, 2010.  *Id.* at 1.  On January 1, 2012, Defendant filed a second foreclosure action against Plaintiff in the District Court of Denver County, Colorado.  *See Second Register of Actions* [#11-6] (the "Second Foreclosure Action").  Five months later, Defendant's Rule 120 Motion was granted and an order was issued authorizing sale of the Property at foreclosure.  *See id.* at 1-2.  Plaintiff alleges that through October 2012, he and Defendant continually discussed loss mitigation possibilities, which ultimately resulted in him being "kicked out" of a June 2012 modification plan without explanation.  *Compl.* [#1] at ¶¶ 30-38.  On October 4, 2012, Plaintiff filed for Chapter 13 bankruptcy (the "Second Bankruptcy").  *See Second Bankruptcy Petition* [#11–8] at 1-14.  In the Second Bankruptcy, Plaintiff again failed to disclose his potential claims against Defendant related to its alleged bad faith conduct beginning in 2009 relating to the Trial Period Plan.  *Id.* at 12-18.  On March 22, 2013, the bankruptcy court issued an order confirming Plaintiff's Fourth Amended Chapter 13 Plan, under which he agreed to surrender the Property to Defendant.  *See Fourth Am. Chapter 13 Plan* [#11-10] at 5; *Second Bankruptcy Petition* [#11-8] at 3-4.

Plaintiff asserts four claims against Defendant for breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, and violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101 ("CCPA").[6]  *Compl.* [#1] at ¶¶ 74-133.  He

---

[6] Plaintiff's Complaint labels his first cause of action as "Breach of Contract, Duty of Good Faith and Fair Dealing" and his fourth cause of action as "Injunctive Relief."  *See Compl.* [#1] at ¶¶ 74, 119.  Because breach of contract and breach of the duty of good faith and fair dealing are two separate causes of action,  the  Court  refers to breach of contract as the first cause of  action  and

seeks actual and punitive damages, including reasonable costs and attorneys' fees, and injunctive and declaratory relief. *Id.* at ¶¶ 119-133(A)-(H).

## C.      The Motion

In the instant motion, Defendant asks the Court to dismiss Plaintiff's Complaint on the basis of standing, statute of limitations, and failure to state a claim. *See Motion* [#11] at 2. Specifically, with respect to standing, Defendant argues that because Plaintiff did not disclose any of the claims at issue in this case in either of his two bankruptcy petition schedules, he is not the real party in interest to assert these claims against Defendant. *See id.* at 7-9. Defendant also argues that the three-year statute of limitations bars Plaintiff's claims because they each stem from his 2009 loan modification plan rejection, more than three years prior to the filing of the Complaint in this case. *See id.* at 9-10. Finally, Defendant argues that Plaintiff fails to state a claim for relief because he has not alleged a significant public impact and the Complaint does not suggest that this action involves anything other than a private dispute over a loan, which cannot support a CCPA claim. *See id.* at 10-11.

## II. Standard of Review

## A.      Rule 12(b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) attacks a court's subject matter jurisdiction. The determination of a court's jurisdiction over the subject is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987). The objection that a federal court lacks subject matter

---

breach of the duty of good faith and fair dealing as the second. Furthermore, injunctive relief is a remedy, not a cause of action. Accordingly, the Court treats it as such.

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised by a party, or by a court on its own initiative, at any stage in the litigation. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).  If at any time, the Court determines that it lacks subject matter jurisdiction, the court must dismiss the action.  Fed. R. Civ. P. 12(h)(3);  *Arbaugh*, 546 U.S. at 506.  A 12(b)(1) motion may take two forms: a facial attack or factual attack on the complaint. When reviewing a facial attack on the complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), and when the challenge is supported by affidavits and other documents, the Court makes its own factual findings.  *Id.* at 1003.

**B.   Rule 12(b)(6)**

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged

misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "[a] pleading that

offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action

will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'"  *Id.*  (citation omitted).   That said, "[s]pecific facts are not

necessary[.  Instead,] the statement need only give the defendant fair notice of what the

. . . claim is and the grounds upon which it rests[, and is not required to] include all facts

necessary to carry the plaintiff's burden."  *Khalik*, 671 F.3d at 1192 (internal citation and

quotation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678

(citation omitted).  As the Tenth Circuit has explained, "the mere metaphysical possibility

that some plaintiff could prove some set of facts in support of the pleaded claims is

insufficient; the complaint must give the court reason to believe that this plaintiff has a

reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk,

LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  "Where a complaint pleads facts

that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).

## C.    Plaintiff's Pro Se Status

The Court must construe the filings of pro se litigants liberally.  *See Haines v.

Kerner*, 404 U.S. 594, 520-521 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991).  However, the Court should not be the pro se litigants' advocate, nor should the

Court "supply additional factual allegations to round out [the pro se litigants'] complaint or

construct a legal theory on [their] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170,

7

1173-1174 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  Additionally, pro se litigants

must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d

1276, 1277 (10th Cir. 1994).

### III. Analysis

As a threshold procedural matter, the court notes that Defendant has attached to its

Motion various documents from Plaintiff's First and Second Bankruptcy proceedings.  *See

Adjustable Rate Note* [#11-1]-*Fourth Am. Chapter 13 Plan* [#11-10].  Because these court

documents relate to threshold matters, rather than convert Defendant's Motion to a motion

for summary judgment pursuant to Fed. R. Civ. P. 12(d), the Court finds it appropriate to

take judicial notice of the facts contained in these documents.  *Tal v. Hogan*, 453 F.3d

1244, 1265 n.24 (10th Cir. 2006) ("Facts subject to judicial notice may be considered in a

Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary

judgment.").

### A.     Standing

Courts have disagreed over whether a debtor's attempt to bring undisclosed

pre-bankruptcy claims is a standing defect or raises a judicial estoppel issue.  *Canen v.

U.S. Bank Nat. Ass'n*, 913 F. Supp. 2d 657, 659 (N.D. Ind. 2012).  In *Clementson v.

Countrywide Fin. Corp.*, ("*Clementson III*") 464 F.App'x 706 (10th Cir. 2012), the Tenth

Circuit adjudicated a case involving an alleged breach of contract, breach of implied

covenant of good faith and fear dealing, and violation of the CCPA.  It analyzed the

plaintiff's claims for monetary relief in the context of standing, affirming the district court's

determination that the plaintiff's failure to list his causes of action in his bankruptcy petition

divested him of standing in the underlying litigation. *See Clementson III*, 464 F.App'x at 711. Accordingly, the Court here will address Plaintiff's claims for monetary relief in the context of standing. Plaintiff's claims for injunctive and declaratory relief will be addressed in the context of judicial estoppel. *See EEOC v. Outback Steak House Inc.*, No. 06-cv-01935-EWN-KLM, 2008 WL 3992171, at *3 (D. Colo. Aug. 20, 2008) (clarifying that an order granting the defendant's motion to dismiss for lack of standing because the bankruptcy trustee was the real party in interest only applied to claims for monetary relief, not injunctive relief).

Defendant argues that Plaintiff's Complaint should be dismissed because he lacks standing. *Motion* [#11] at 2, 7-9. Specifically, Defendant argues that when Plaintiff filed his petitions in the First Bankruptcy and Second Bankruptcy, his potential legal claims against Defendant, including those at issue in this case, became property of the bankruptcy estates. *Id.* at 8-9. Accordingly, Defendant argues that Plaintiff is not the real party in interest to assert these claims and the Complaint should be dismissed. *Id.* at 9.

Rule 17(a) of the Federal Rules of Civil Procedure provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1); *Anderson v. Van Pelt*, No. 09-cv-00704-CMA-KMT, 2013 WL 856508, at *2 (D. Colo. Mar. 7, 2013). "[T]he real party in interest is the one who, under applicable substantive law, has the legal right to bring suit." *FDIC v. Gelderman Inc.*, 975 F.2d 695, 698 (10th Cir. 1992); *Anderson*, 2013 WL 856508, at *2. When a debtor files for bankruptcy, all of his legal or equitable interests become the property of the bankruptcy estate, at which point the bankruptcy trustee becomes the real party in interest with respect to those claims. 11 U.S.C. §§ 323(a), 541(a); *see Brumfiel v. U.S. Bank*, No. 12-cv-02716-WJM, 2013 WL 5495543, at

9

*4 (D. Colo. Oct. 2, 2013) ("The filing of a bankruptcy petition transforms the filing party's 'legal or equitable interests' into property of the bankruptcy estate.").  Accordingly, "[t]he bankruptcy code imposes a duty upon a debtor to disclose all assets, including . . . all legal claims and causes of action, pending or potential, which a debtor might have."  *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007).

Any assets or legal claims that are not properly disclosed in a debtor's schedule of assets and liabilities remain property of the bankruptcy estate and the debtor loses all rights to enforce any of the disclosed legal claims in his own name.  *See* 11 U.S.C. §§ 541(a)(1), 554(d);  *Clementson III*, 464 F.App'x at 711 (holding that a plaintiff lacks standing to bring claims that were not disclosed in a prior bankruptcy filing because the claims belong to the bankruptcy estate);  *Milligan v. Reed*, 410 F.App'x 131, 133 (10th Cir. 2011) ("Assets not properly scheduled [by the debtor] remain the property of the bankruptcy estate.").  Additionally, because a debtor's duty to disclose assets is "ongoing," property of the bankruptcy estate is not limited only to "claims or causes of action existing at the time the bankruptcy case is filed;" property of the bankruptcy estate includes all potential legal claims. *See* 11 U.S.C. §§ 1207(a)(1), 1306(a)(1);  *Eastman*, 493 F.3d at 1159 ("A debtor's ignorance or mistake, even if insufficiently egregious to warrant application of judicial estoppel, does not excuse a debtor from listing all potential causes of action in a bankruptcy petition.");  *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) ("The obligation to disclose . . . claims in bankruptcy proceedings is an ongoing one.");  *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (quoting *In re Envirodyne Indus., Inc.*, 183 B.R. 812, 821 n.17 (Bankr. N.D. Ill. 1995)) ("The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor

has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed."); *Harrah v. DSW, Inc.*, 852 F. Supp. 2d 900, 906-907 (N.D. Ohio 2012) ("It does not appear that any court has accepted ignorance of the law as an excuse for a party's failure to comply with the requirement of full disclosure.").

A debtor's failure to disclose claims deprives him of status as the real party in interest with respect to claims for monetary relief but not as to claims for injunctive relief. *See Clementson v. Countrywide Fin. Corp.*, No. 10-cv-01956-WYD-KMT, 2011 WL 1884637, at *1 ("*Clementson II*") (D. Colo. May 18, 2011) ("[T]he bankruptcy trustee is the real party in interest to the extent [the plaintiff] seeks monetary relief. . . . [H]owever, [to] the extent [the plaintiff] seeks injunctive relief, he remains the real party in interest."); *Brumfiel*, 2013 WL 5495543, at *4 (holding that a plaintiff's "failure to disclose does not prohibit [her] from pursuing any claims for injunctive relief that she may have"); *Clementson III*, 464 F.App'x at 709 (recognizing the district court's adoption of a recommendation dismissing all claims except for the plaintiff's claim seeking injunctive relief).

Plaintiff filed the First Bankruptcy on March 17, 2010 and amended his statement of financial affairs and schedule of assets and liabilities on May 3, 2010. *See First Bankruptcy Petition* [#11-3] at 2-10. He concedes that he did not disclose any of his potential claims against Defendant in either of his two bankruptcy cases. *Response* [#16] at 1. Plaintiff alleges that ten months prior to the First Bankruptcy, he and Defendant entered into the Trial Period Plan, in which he was required to make three monthly payments by July 2009 and in return, Defendant would provide a mortgage loan

11

modification proposal. *Compl.* [#1] at ¶¶ 15-16. He then alleges that after successfully completing his payments (and continuing to make monthly payments through March 2010), Defendant never provided the loan modification proposal. *Id.* at ¶ 17. Furthermore, Plaintiff alleges that "in or about" March 2010, Defendant told him that his modified monthly mortgage payments would no longer be accepted. *Id.* at ¶ 19.

Plaintiff alleges that by the time he amended his schedule of assets and liabilities relating to his First Bankruptcy in May 2010, Defendant had allegedly neglected to provide a loan modification proposal for eight months and had declined to accept Plaintiff's modified mortgage loan payments. *Id.* at ¶¶ 17-18. Therefore, accepting as true Plaintiff's allegations for purposes of considering the Motion, Plaintiff's potential legal claims, which are asserted in the instant action, accrued prior to his filing of an amended schedule. *See Clementson III*, 464 F.App'x at 713 ("[A] cause of action accrues when the plaintiff has 'knowledge of facts essential to the cause of action.'"). Accordingly, Plaintiff was required to disclose the legal claims he now asserts during his First Bankruptcy case. *See id.* at 711 (affirming district court ruling that the plaintiff's claims were the property of the bankruptcy estate because they were not listed in the bankruptcy case and accrued before his bankruptcy filings).

Plaintiff additionally alleges that at the time of his First Bankruptcy filing, he had "no idea that he might have a claim against [Defendant]" and "only knew that he might have a claim some weeks after his filing." *Response* [#16] at 2. He alleges that even at that point, he was still "uncertain" as to whether he possessed a potential legal claim against Defendant. *Id.* However, this argument fails.

First, a plaintiff must disclose the existence of all potential legal claims in a

bankruptcy petition and "uncertainty" about their existence is not an excuse.  *See Clementson III*, 464 F.App'x at 711 (holding that the plaintiff lacked standing and stating that "a debtor's ignorance or mistake . . . does not excuse [him] from listing all potential causes of action in a bankruptcy petition").  Second, even if the potential legal claim did not arise until a date in March 2010 after his initial bankruptcy filing, Plaintiff still failed to disclose the potential claim in both his May 2010 amendment to his schedule of assets and liabilities filed in his First Bankruptcy and in his Second Bankruptcy petition filed over two years later.  *See id.*; *Brumfiel*, 2013 WL 5495543, at *4 (stating that a bankruptcy petition must include "all legal claims and causes of action, pending or potential"); *Cannon-Stokes v. Potter*, 453 F.3d 446, 449 (7th Cir. 2006) (stating that "if [the plaintiff was] really making an honest attempt to pay her debts, then as soon as she realized that [an asset] had been omitted, she would have filed amended schedules and moved to reopen the bankruptcy"); *see generally Second Bankruptcy Petition* [#11-8].

With respect to the Second Bankruptcy, Plaintiff argues that: (1) he discussed his "inkling of [the legal claims'] potential existence" with his attorney before the Second Bankruptcy filing in October 2012 and assumed the attorney would properly disclose them, which never occurred.  Plaintiff further argues that because the Second Bankruptcy case is still pending, Plaintiff can now file an amendment to his schedule of assets and liabilities disclosing his legals claims against Defendant, which would cure the defect.  *See Response* [#16] at 2.  These arguments also fail.

First, Plaintiff is bound by the acts of his attorney.  *Eastman*, 493 F.3d at 1157 (citing *Cannon-Stokes*, 453 F.3d at 446) (explaining that a debtor cannot pin the blame on an attorney whom he allegedly told of his potential claims);  *see Barger v. City of Cartersville,*

13

*Ga*, 348 F.3d 1289, 1295 (11th Cir. 2003) (recognizing that although the debtor informed his bankruptcy attorney about his pending lawsuit, "the attorney's omission is no panacea"). The remedy for bad legal advice rests in malpractice litigation. *Eastman*, 493 F.3d at 1157. Therefore, Plaintiff's alleged assumption that his attorney would disclose the potential legal claims is insufficient to absolve Plaintiff of his duty to disclose them to the bankruptcy court.

Second, the Tenth Circuit has consistently affirmed district court denials of a plaintiff's attempt to amend his bankruptcy filings in response to an adversary's motion in a civil case. *See Barker v. Asset Acceptance, LLC*, 874 F. Supp. 2d 1062, 1066 (D. Kan. 2012). "Allowing [a party] to 'back up' and benefit from [a reopening] of his bankruptcy would 'suggest[] that a debtor should consider disclosing potential assets only if he is caught concealing them.'" *Id.* Therefore, courts generally disallow plaintiffs the opportunity to amend a bankruptcy filing in response to a defendant's motion challenging an undisclosed claim. *See Ardese v. DCT, Inc.*, 280 F.App'x 691, 696 (10th Cir. 2008) (acknowledging that "courts will generally not allow a plaintiff to [amend his] bankruptcy filings in response to a motion for summary judgment . . . in an ongoing civil case"); *Scoggins v. Arrow Trucking Co.*, 92 F. Supp. 2d 1372, 1373-1374 (S.D. Ga. 2000) (holding that the plaintiff's attempt to amend his petition to add a pre-petition claim "[was] too late" since he only attempted to amend his schedules "because his adversary exposed his omission"). Accordingly, because Plaintiff here proposes to amend his schedule in response to Defendant's Motion, which argues that Plaintiff failed to disclose the claims against it in his bankruptcy filings, such a proposal cannot save his claims. *See Queen v. TA Operating, LLC*, 734 F.3d 1081, 1092, 1094-1095 (10th Cir. 2013).

Because all of Plaintiff's claims for monetary relief became property of the First

14

Bankruptcy's estate, he is not the real party in interest with respect to these claims. Accordingly, pursuant to Fed. R. Civ. P. 12(b)(1), the Court **recommends** that all of Plaintiff's claims for monetary relief be **dismissed without prejudice** on the basis of standing. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-1217 (10th Cir. 2006) (recognizing the established rule that "where the district court dismisses for lack of jurisdiction . . ., the dismissal must be without prejudice").  To the extent Plaintiff seeks injunctive and declaratory relief, he remains the real party in interest.  *See Clementson v. Countrywide Fin. Corp.*, No. 10-cv-01956-WYD-KMT, 2011 WL 1884715, at *6 ("*Clementson I*") ("A plaintiff ordinarily will remain the real party in interest with respect to claims for injunctive relief.");  *Wilkerson v. Schirmer*, No. 04-cv-00258-WDM-MEH, 2009 WL 2766716, at *1 (D. Colo. Aug. 26 2009);  *Outback Steak House Inc.*, 2008 WL 3992171, at *3 (clarifying that an order granting the defendant's motion to dismiss because the bankruptcy trustee was the real party in interest only applied to monetary claims and did not dismiss the injunctive claims).

## B.    Judicial Estoppel

Defendant argues that Plaintiff is estopped from bringing his claims for injunctive and declaratory relief because he failed to disclose them in either of his two bankruptcy cases. *See Motion* [#11] at 7-9.  "[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion," which may be based on three factors. *Wright v. Twin City Fire Ins. Co.*, No. 11-cv-03181-KLM, 2013 WL 6283895, at *5 (D. Colo. Dec. 3, 2013);  *Queen*, 734 F.3d at 1087.  These three factors are:

15

> First, a party's subsequent position must be clearly inconsistent with its former position.  Next, a court should inquire whether the [ ] party succeeded in persuading the court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.  Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Queen*, 734 F.3d at 1087.  These factors are not "an exhaustive formula for determining the applicability of judicial estoppel."  *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).  "Additional considerations may inform the doctrine's application in specific factual contexts."  *Id.*

As stated above, Plaintiff failed to disclose the claims at issue in this case in either the First Bankruptcy or the Second Bankruptcy, despite knowledge of the facts giving rise to their existence.  With regard to the first factor, this failure to disclose renders his position in this case clearly inconsistent with his previous position in both bankruptcy cases.  *See Anderson*, 2014 WL 553486, at *3 (applying judicial estoppel against the plaintiff where she failed to disclose a claim against the defendant to the bankruptcy court).  The second factor also weighs in favor of estopping Plaintiff from asserting his claims against Defendant in this action.  Plaintiff received an order of discharge in his First Bankruptcy case on June 25, 2010 and his plan was confirmed in the Second Bankruptcy case on March 22, 2013.  *See generally First Bankruptcy Petition* [#11-4]; *Second Bankruptcy Petition* [#11-8].  Therefore, Plaintiff has persuaded two bankruptcy judges to accept the position that he lacked any potential legal claims against Defendant.  Accordingly, his filing of claims in this case creates a clear inconsistency.  *See Anderson*, 2014 WL 553486, at *3 (applying

16

judicial estoppel against the plaintiff where her failure to disclose persuaded the bankruptcy judge to accept her position before she subsequently filed a claim against the defendant). Finally, if not estopped here, Plaintiff would gain an unfair advantage in the litigation against Defendant because a potential recovery would be secured solely for his benefit, in addition to his previous debt discharge.  *See Anderson*, 2014 WL 553486, at *3 (recognizing the plaintiff maintained an advantage by securing any potential recovery solely for her own benefit and by potentially having debt discharged in the case).  Therefore, all those factors weigh in favor of the doctrine of judicial estoppel being applied against Plaintiff here. Further, there are no additional considerations that would counsel against application of the doctrine of judicial estoppel.  Accordingly, Plaintiff is judicially estopped from asserting these claims for injunctive and declaratory relief against Defendant.  Therefore, pursuant to Fed. R. Civ. P. 12(b)(6), the Court **recommends** that all of Plaintiff's claims seeking injunctive and declaratory relief be **dismissed with prejudice**.  *See Queen*, 734 F.3d 1081, 1086 (affirming district court's dismissal with prejudice on the basis of judicial estoppel).

### III. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendant's Motion [#11] be **GRANTED**.  Accordingly,

IT IS FURTHER **RECOMMENDED** that Plaintiff's claims seeking monetary relief be **DISMISSED without prejudice** on the basis of standing.

IT IS FURTHER **RECOMMENDED** that Plaintiff's claims seeking injunctive and declaratory relief be **DISMISSED with prejudice** on the basis of judicial estoppel.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-148 (1985), and also waives appellate review of both factual and legal questions.   *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-1413 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  April 8, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

18