IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-03233-RBJ-KLM

CHARLES C. GRILLO,

    Plaintiff,

v.

JPMORGAN CHASE & CO.,

    Defendant.

# ORDER

This is a case about a "mortgage" (a deed of trust), an alleged contract modifying the mortgage, foreclosure, and two bankruptcies. The case is before the Court on JPMorgan Chase & Co.'s motion to dismiss [ECF No. 11] and Magistrate Judge Mix's accompanying Report and Recommendation [ECF No. 18]. There is complete diversity between the parties, and the amount in controversy exceeds $75,000. Therefore the Court has jurisdiction pursuant to 28 U.S.C. § 1332. The Court agrees with the defendant and Judge Mix that Mr. Grillo is not the real party in interest for his claims requesting monetary relief. Mr. Grillo's claims for injunctive relief, however, are more complicated, and the Court requests additional briefing on that topic before ruling on the motion to dismiss.

    **I.    FACTUAL BACKGROUND.**

The plaintiff, Charles C. Grillo, received a mortgage loan from JPMorgan Chase & Co. ("Chase") in 2007. Mr. Grillo alleges that as a prerequisite to obtaining financing, Chase required him to consolidate his personal credit card debt with the new mortgage resulting in an

underwater loan.  Mr. Grillo became unable to afford the payments on this new mortgage and defaulted in 2009.  He alleges that Chase granted him a Trial Period Plan ("TPP") in May of 2009.  This TPP would have provided permanent loan modification in exchange for Mr. Grillo's making three trial payments over the course of three months.  Mr. Grillo allegedly made the three trial payments, but Chase never enrolled him in the modification.  Instead, in March 2010, Chase allegedly refused to accept the payments and sought foreclosure of the encumbered property.

On March 17, 2010, Mr. Grillo filed for bankruptcy under Chapter 7.  *See* Case No. 10-15686-SBB.  Nowhere in the schedules of assets for this bankruptcy did Mr. Grillo disclose potential claims against Chase related to the loan modification.  [ECF No. 11, Ex. 4.]  The bankruptcy court granted an order of discharge on June 25, 2010.  While the bankruptcy was still pending, Chase filed a foreclosure action in the Denver District Court on June 11, 2010.[1]  [ECF No. 11, Ex. 5.]  The case was dismissed without prejudice in September 2010, but Chase refiled on January 1, 2012.  [ECF No. 11, Ex. 6.]  The court granted the Rule 120 motion in June 2012, authorizing sale of the foreclosed property.  *Id.*  Mr. Grillo claims that he and Chase then entered into yet another round of negotiations in an attempt to find a way to let him stay in the home.  He further claims that Chase "kicked [him] out" of the modification plan in October 2012 without any explanation.  On October 4, 2012, Mr. Grillo filed a second bankruptcy petition—this time under Chapter 13—in which he again did not disclose any potential claims against Chase.  [ECF No. 11, Ex. 8; *see* Case No. 12-30610-SBB.]  This second bankruptcy came to a close on March 22, 2013 when the bankruptcy court approved the Amended Chapter 13 Plan in which Mr. Grillo agreed to surrender the foreclosed property to Chase.  [ECF No. 11, Ex. 10.]

---

[1] The Bankruptcy Court granted an Order of Discharge on June 25, 2010, and it closed Mr. Grillo's first bankruptcy case on November 17, 2010.

## II.   PROCEDURAL BACKGROUND.

Mr. Grillo filed a complaint against Chase on November 26, 2013. [ECF No. 1.] He brings claims of breach of contract, promissory estoppel, and violations of the Colorado Consumer Protection Act ("CCPA"). *Id.* Chase moved to dismiss Mr. Grillo's complaint for lack of jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and I referred the matter to Magistrate Judge Kristen L. Mix for a recommended disposition. Judge Mix recommended dismissal on the grounds that Mr. Grillo is not the real party in interest to bring claims seeking monetary relief, and that he is judicially estopped from bringing his remaining claims seeking injunctive relief. [ECF No. 18.] Mr. Grillo filed an objection to the recommendation on May 6, 2014. [ECF No. 21.] The motion and recommendation are now fully briefed and ripe for review by the Court.

## III.   ANALYSIS.

### A. <u>Standard of Review</u>.

Following the issuance of a magistrate judge's recommendation on a dispositive matter the district court judge must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The district judge is permitted to "accept, reject, or modify the recommended disposition; receive further instruction; or return the matter to the magistrate with instructions." *Id.* However, a party's failure to object to a magistrate judge's recommendation on a dispositive motion does not "strip a district court of its power to revisit" the motion. *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006) (citations omitted). In such a situation, "the district court was required to 'defer to the magistrate judge's ruling unless it [was] clearly erroneous or contrary to law.'" *Id.* (quoting *Hutchinson v. Pfeil,*

105 F.3d 562, 566 (10th Cir.1997)). "Under the clearly erroneous standard, 'the reviewing court [must] affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988)).

Chase's motion to dismiss is grounded on purported lack of subject matter jurisdiction and failure to state a claim. A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can take two forms: the motion can attack the face of the complaint, or it can attack the facts supporting jurisdiction. Where the motion attacks the facts underlying jurisdiction,

> a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted, the Court must accept the well-pleaded allegations of the complaint as true and construe them in plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Allegations that are purely conclusory need not be assumed to be true. *Id.* at 1951.

Finally, because Mr. Grillo represents himself *pro se*, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by

4

attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

### B. Mr. Grillo's Objections.

1. Judicial Notice.

Mr. Grillo objects to Judge Mix's reliance on evidence outside the pleadings (i.e. documents from Mr. Grillo's bankruptcy proceedings) with respect to defendant's Rule 12(b)(6) motion, arguing that she should have converted JP Morgan's motion to dismiss into a motion for summary judgment and given him the opportunity to submit additional evidence of his own. [ECF No. 21 at 1-2.]. In this instance I disagree with him.

It is true that, "in general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings." *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999). However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). In addition, Fed. R. Evid. 201 allows a court to take judicial notice of an adjudicative fact not reasonably subject to dispute if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The court may take judicial notice of the fact at any stage of the pleadings. It can do so on its own or at the request of one of the parties. Fed. R. Evid. 201(c)–(d). "Facts subject to judicial notice may be considered in a Rule 12(b)(6) motion

5

without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

The documents in question are the documents from Mr. Grillo's two bankruptcies. [ECF No. 18 at 8.] The accuracy of these documents cannot reasonably be questioned, and indeed Mr. Grillo does not dispute their accuracy. Therefore it was entirely proper for Judge Mix to take judicial notice of the bankruptcy schedules without converting Chase's motion to dismiss into a motion for summary judgment.

### 2. Ongoing Acts.

Mr. Grillo also objects to Judge Mix's recommendation on the grounds that she "improperly ignored actions by Chase following [his] bankruptcies." [ECF No. 21 at 2.] In a nutshell, Mr. Grillo alleges that even after his bankruptcies were filed, Chase continued making misleading statements, thereby causing him to believe he would be eligible for a loan modification program and that Chase would eventually make good its end of the bargain. Assuming the truth of these allegations, Judge Mix nonetheless was correct in concluding that these subsequent actions did not change the fact that Mr. Grillo's claims against Chase accrued before his bankruptcy filings, and therefore he is not the real party in interest to bring his claims for monetary relief.

Federal Rule of Civil Procedure 17(a) requires that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). A person who files for bankruptcy transfers his or her property to the bankruptcy estate, including "all legal or equitable interest of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1). This definition "includes causes of action belonging to the debtor at the commencement of the bankruptcy case." *Sender v. Simon*, 84 F.3d 1299, 1305 (10th Cir. 1996).

6

"The bankruptcy code imposes a duty upon a debtor to disclose all assets, including contingent and unliquidated claims. That duty encompasses disclosure of all legal claims and causes of action, pending or potential, which a debtor might have." *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007) (citation omitted). Whatever property is not abandoned or administered by the trustee during the bankruptcy proceedings "remains property of the estate." 11 U.S.C. § 554(d).

"[A] cause of action accrues when the plaintiff has knowledge of the facts essential to the cause of action." *Clementson v. Countrywide Fin. Corp.*, 464 F. App'x 706, 713 (10th Cir. 2012) (unpublished). "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that [he] may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999), *cert. denied*, 120 U.S. 936 (2000) (quoting *Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus., Inc.)*, 183 B.R. 812, 821 n.17 (Bankr. N.D. Ill. 1995). "When the bankruptcy action is closed, properly scheduled assets not otherwise administered revert to the debtor through abandonment under 11 U.S.C. § 554(c)." *Clark v. Trailiner Corp.*, No. 00-5020, 2000 WL 1694299, at *1 (10th Cir. Nov. 13, 2000) (unpublished) (internal quotation marks omitted). Assets not properly scheduled, however, "remain property of the bankruptcy estate." *Id.* "As a result, the debtor loses all rights to enforce any unscheduled legal claim in his own name." *Id.*

Claims seeking injunctive relief are treated differently. A plaintiff remains the real party in interest to bring claims seeking injunctive or declaratory relief even if those claims were not disclosed in an earlier bankruptcy proceeding. *See Clementson v. Countrywide Fin. Corp.*, No. 10-cv-01956-WYD-KMT, 2011 WL 1884715, at *6 (D. Colo. 2011) ("A plaintiff ordinarily will

remain the real party in interest with respect to claims for injunctive relief."); *Wilkerson v. Schirmer Eng'g Corp.*, No. 04-cv-00258-WDM-MEH, 2009 WL 2766716, at *1 (D. Colo. 2009); *E.E.O.C. v. Outback Steak House of Florida, Inc.*, No. 06-cv01935-EWN-KLM, 2008 WL 3992171, at *3 (D. Colo. 2008) ("In *Barger*, the Eleventh Circuit stated that 'judicial estoppel does not prohibit Barger from pursuing any claims for injunctive relief that she may have,' because her 'claim for injunctive relief . . . would have added nothing of value to the bankruptcy estate even if she properly disclosed it.'") (quoting *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1297 (11th Cir. 2003)).

Mr. Grillo claims that Chase engaged in bad faith and improperly denied his loan modification. The conduct giving rise to these claims began in 2009. [ECF No. 1 ¶ 9-133.] Therefore, even if Mr. Grillo was uncertain about his legal claims, he had knowledge of the facts essential to his claims against Chase when Chase allegedly failed to uphold its end of the loan modification agreement in 2009. At a minimum, any doubt about these facts should have been dispelled when Chase sought and obtained foreclosure on Mr. Grillo's property prior to the filing of his second bankruptcy petition. He is not the real party in interest to bring these claims.

## C. Other Portions of the Recommendation.

As noted above, even those parts not properly objected to by Mr. Grillo may be subject to clear error review by this Court. Two portions of the Recommendation give me pause.

### 1. Referral to Trustee.

First, it appears that while Mr. Grillo is not the real party in interest to bring his claims for monetary relief, prior to dismissal the real party in interest—in this case, the Bankruptcy Trustee—must be given an opportunity to substitute, join, or ratify the action. Fed. R. Civ. P. 17(a)(3). "The court may not dismiss an action for failure to prosecute in the name of the real

8

party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Therefore, before the Court can dismiss Mr. Grillo's claims for monetary relief, the Trustee must be notified and given an opportunity to participate in the case. *See EEOC v. Outback Steak House*, 2007 WL 2947326, at *4-5 (D. Colo. 2007).

### 2. Judicial Estoppel of Injunctive Claims.

The magistrate judge recommended dismissal of Mr. Grillo's claims for injunctive relief based on the doctrine of judicial estoppel. Although I agree with her reasoning for the most part, I ultimately conclude that judicial estoppel does not apply to these facts.

"The purpose of judicial estoppel 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.... [and] to prevent improper use of judicial machinery.'" *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50, (2001) (internal quotation marks omitted)). A court must consider three factors when deciding whether to apply judicial estoppel.

> First, a party's subsequent position must be clearly inconsistent with its former position. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled [.] Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Eastman,* 493 F.3d at 1156 (alteration in original) (citations omitted) (internal quotation marks omitted). However, "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire*, 532 U.S. at 751. For example, it "may be

9

appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." *Id.* at 753.

Mr. Grillo's bankruptcy filings are undoubtedly inconsistent with his later assertion of claims against Chase. The second factor is also satisfied because Mr. Grillo twice convinced the Bankruptcy Court that he had no legal claims against third parties. *Cf. Queen*, 734 F.3d at 1091 ("Our concern is not so much with whether [the Queens] acted with some nefarious motive as it is whether [their] actions led the bankruptcy court to accept [their] position, so that judicial acceptance of an inconsistent position in a later proceeding would introduce the risk of inconsistent court determinations and thus pose a threat to judicial integrity.") (quoting *Paup v. Gear Prods., Inc.*, 327 F. App'x 100, 107 (10th Cir. 2009) (unpublished)).

But the third factor convinces me that it would be unjust to apply judicial estoppel to Mr. Grillo's claims. Mr. Grillo's claims for injunctive relief were never the property of the bankruptcy estate and did not represent an asset that could have been used to satisfy his creditors. *Cf. Queen*, 734 F.3d at 1092 ) ("Thus, if not estopped, the Queens would gain an unfair advantage by being allowed to proceed with the District Court Action [seeking *monetary* relief], because they could pursue the litigation without the risk that any of the award would go to their creditors."). Chase does not explain why allowing Mr. Grillo to pursue these claims today is an unfair advantage. Presumably Mr. Grillo's creditors and the two trustees have no interest in whether Mr. Grillo's pursuit of injunctive relief continues. The magistrate judge cited *Anderson v. Seven Falls Co.*, No. 12-cv01490-RM-CBS, 2014 WL 553486, at *3 (D. Colo. 2014). But that case involved pursuit of monetary relief where the potential unfairness to the plaintiff's creditors was apparent.

Related to the issue of unfairness under the third prong, Mr. Grillo raises a defense of inadvertence and mistake. He claims he was not entirely sure of his legal claims and did not intend to mislead the Bankruptcy Court. When a plaintiff argues mistake or inadvertence as a defense to judicial estoppel, courts look to whether the plaintiff had knowledge of the claim and a motive to conceal it. *Eastman,* 493 F.3d at 1157 ("Where a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at times *sub silentio,* infer deliberate manipulation.") Mr. Grillo had (or should have had) knowledge of his possible claims against Chase during his bankruptcies, as discussed above. However, because the injunctive claims were never the property of the bankruptcy estate, and because those claims could not have generated any financial value for the estate, Mr. Grillo would not seem to not have had any motive to conceal them from the trustee. To be sure, in many cases a court identifies a motive to conceal, rejects the defense of inadvertence, and applies judicial estoppel. These cases, as far as this Court can tell, always involve claims for monetary relief that were never disclosed during bankruptcy or were disclosed only after a motion from the opposing party. *See, e.g.*, *Anderson*, 2014 WL 553486, at *3; *Queen*, 734 F.3d at 1093-94; *Eastman*, 493 F.3d at 1157. In cases where the only remaining claims seek injunctive or declaratory relief, however, the doctrine is often inapplicable. *Cf. E.E.O.C.*, 2008 WL 3992171, at 3 (applying equitable estoppel to plaintiff's monetary claims, but declining to apply the doctrine to the plaintiff's remaining claims for injunctive relief).

In sum, because I do not find that he obtained an unfair advantage by failing to disclose a potential claim against Chase for equitable relief in the bankruptcy proceeding(s), I conclude that the doctrine of judicial estoppel does not bar that claim.

3. <u>Colorado Consumer Protection Act</u>.

Mr. Grillo's claims under the CCPA cannot survive the motion to dismiss. His complaint alleges a private wrong against him, but CCPA claims must allege that the wrong "significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property." *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012). "A wrong that is 'private in nature, and does not affect the public,' does not give rise to liability under the Act." *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1123 (D. Colo. 2010) *aff'd,* 12-1187, 2014 WL 1853858 (10th Cir. May 9, 2014) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003)). There is no allegation here of any public impact.

**D. <u>Remaining Issues</u>.**

Although judicial estoppel does not apply, I recognize that the magistrate judge's recommendation to dismiss the injunction claims might nevertheless be appropriate. However, the briefs do not address (or barely do so) issues that I believe are potentially applicable to that issue. Accordingly, the Court requests additional (but short) briefing regarding the following issues:

- Whether Mr. Grillo's requests for injunctive relief to stop the pending foreclosure sale can be granted by this Court in light of the *Rooker-Feldman* doctrine's prohibition on federal appellate review of state court proceedings. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).

- Whether the remaining injunctive claims are worth at least $75,000 such that this Court's diversity jurisdiction may be maintained.

- Whether Mr. Grillo's claim for specific performance of Chase's contractual obligations under the loan modification can be maintained if the Court lacks the power to enjoin the pending foreclosure sale.

- Whether Mr. Grillo's claims are subject to the three-year statute of limitations under Colo. Rev. Stat. § 13-80-101(a) or the six-year statute of limitations under Colo. Rev. Stat. § 13-80-103.5.  The Court is not (at least yet) convinced that the putative loan modification means the statute of limitations for contract actions applies rather than the statute of limitations for "the enforcement of rights set forth in any instrument securing the payment of or evidencing any debt."

Given the nature of these issues, the Court will ask the Clerk's Office to investigate whether a lawyer might be available for appointment under this district's Civil Pro Bono Pilot Project to assist Mr. Grillo and the Court.

### IV. CONCLUSION.

Cases like this are not easy for the parties or the courts.  Many homeowners fell on hard times during the housing market collapse, eventually ending in bankruptcy.  This Court has witnessed many cases where attempts by the homeowner to renegotiate his loan have failed, not always due to the homeowner's unwillingness or inability to comply with a workout plan.  Under the law Mr. Grillo should have disclosed his potential claims against Chase in his bankruptcy schedules, even if he was unsure of the legal basis for such a claim.  However, it is hard to find fault, as the existence of the claims and the importance of disclosing them were not necessarily obvious to a lay person.  His failure to disclose those claims means that his monetary claims remain the property of the bankruptcy estate.  His various requests for injunctive relief, however, while inconsistent with his bankruptcy schedules, remain his property.

**ORDER**

1. The magistrate judge's recommendation [ECF No. 18] is ADOPTED IN PART.

2. The Court requests that the Clerk of Court send a copy of this Order to Counsel for the U.S. Trustee at

    Douglas B. Kiel
    Chapter 13 Trustee
    4725 Monaco St. Ste. 120
    Denver, CO 80237
    720-398-4444

3. Defendant's motion to dismiss [ECF No. 11] is held in abeyance.

4. The Clerk of Court is requested to investigate the possibility of obtaining pro bono civil counsel for Mr. Grillo and to report back to the Court upon completion of that investigation.

DATED this 30th day of May, 2014.

BY THE COURT:

_(signature)_

_____
R. Brooke Jackson
United States District Judge